**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **CHEIKH FASSA**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**P&E EXPRESS INC.**,<br><br>Defendant. | Case No. 2:21-cv-00542-MHW-CMV<br><br>Judge Michael H. Watson<br>Magistrate Judge Chelsey M. Vascura<br><br>**JOINT MOTION FOR FAIR LABOR STANDARDS ACT SETTLEMENT APPROVAL** |

Representative Plaintiff Cheikh Fassa ("Representative Plaintiff"), on behalf of himself and of the class members, and Defendant P&E Express Inc. ("Defendant") (collectively, the "Parties") hereby jointly and respectfully request that this Honorable Court: approve the Parties' Settlement Agreement and Release of the claims brought pursuant to the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 216(b), and the Ohio Revised Code § 4111.03(D) and § 4113.15.15; approve the requested Service Payment to Representative Plaintiff; and, approve Plaintiffs' Counsel's requested attorneys' fees and costs.

In support of this Motion, the Parties submit the following:

**Exhibit 1**: Fully executed Settlement Agreement, with Exhibit A (Settlement Notice [opt-ins]), Exhibit B (Settlement Notice [non-opt-ins]), and Exhibit C (Settlement Payment List);

**Exhibit 2**: Declaration of Robi J. Baishnab; and,

**Exhibit 3**: Proposed Order Granting Approval of Settlement.

As explained in the attached Memorandum in Support, settlement was reached through arms-length negotiations between the Parties, with each Party being represented by experienced counsel and following substantial investigation and informal exchange of information; and on the

i

basis of mutual recognition of the strengths and weaknesses of the Party's respective legal positions, and in light of the risks to each side of continued litigation.[1]

Respectfully submitted,

| **NILGES DRAHER LLC** | **Ogletree, Deakins, Nash, Smoak & Stewart, P.C.** |
|---|---|
| */s/ Robi J. Baishnab* | */s/Rebecca J. Bennett (with permission)* |
| Robi J. Baishnab (0086195) | Rebecca J. Bennett (0069566) |
| 1360 East Ninth Street | Samuel H. Ottinger (0099034) |
| Suite 808 | Key Tower |
| Cleveland, OH 44114 | 127 Public Square, Suite |
| Telephone:  216.230.2955 | 4100 Cleveland, OH 44114 |
| Facsimile:  (330) 754-1430 | 216-241-6100 |
| Email: rbaishnab@ohlaborlaw.com | 216-357-4733 (FAX) |
|  | Email: rebecca.bennett@ogletree.com |
| Hans A. Nilges (0076017) |           Samuel.ottinger@ogletree.com |
| 7034 Braucher St NW, Suite B |  |
| North Canton, OH 44720 | *Counsel for Defendant* |
| Telephone:  (330) 470-4428 |  |
| Facsimile:  (330) 754-1430 |  |
| Email: hans@ohlaborlaw.com |  |
|  |  |
| *Counsel for Plaintiffs* |  |

---

[1] *See e.g.*, **Ex. 1**, Agreement at ¶¶24, 32.

## MEMORANDUM IN SUPPORT

### I. FACTUAL AND PROCEDURAL BACKGROUND

#### A. The Action

On February 5, 2021, Representative Plaintiff Cheikh Fassa filed this Action against Defendant P&E Express Inc., asserting collective overtime claims against Defendant on behalf of himself and others similarly situated under the FLSA, 29 U.S.C. § 201 *et seq.*, and Ohio Revised Code § 4111.03(D) and § 4113.15 alleging unpaid overtime, liquidated damages, attorneys' fees, costs, expenses, and interest. Specifically, Plaintiff alleged that Defendant did not pay Settlement Class Members all overtime compensation earned, including failure to properly calculate certain bonuses into the regular rate.[2]

On April 26, 2021, Defendant filed its Answer, in which it denied, and it continues to deny, all liability.[3] On May 17, 2021, Plaintiff filed an Amended Complaint, which Defendant answered on June 1, 2021.[4]

#### B. Negotiation of the Settlement

Mediation was scheduled, but based on good-faith arm's length negotiations, which included exchange of documents and discussion of claims alleged and defenses asserted, the Parties agreed to avoid additional cost of mediation.[5]

Documents produced included time and payroll data for Representative Plaintiff and two Opt-in Plaintiffs, including clock in and clock out data, as well as a spreadsheet of time and pay

---

[2] ECF No. 1; Agreement at ¶¶1, 19, 21.

[3] ECF No. 13; Agreement at ¶¶19, 22.

[4] ECF Nos. 18 and 20; Agreement at ¶23.

[5] *See e.g.*, ECF Nos. 21 to 24, 27-32; Agreement at ¶24; Baishnab Decl. at ¶13.

data for 138 of the putative collective members, including Opt-in Plaintiffs Gregory Berry, Anthony McBride, David McCullough, and Brandon Whaley.[6]

The exchange of documents, along with related discussions and debates between Counsel enabled the Parties to understand and assess the detail and substance of their respective claims and defenses. For example, Counsel for both Parties calculated potential damages based on their respective arguments and analysis of the relevant law.[7]

Of the 138 individuals for which data was produced, 38 individuals received no bonus payments and therefore had no calculated damages under the regular rate theory of liability and are therefore not part of the settlement.[8] Documents and data produced by Defendant showed no unpaid overtime for Representative Plaintiff, who Defendant asserts was paid all overtime and is entitled to no damages. However, the Parties agree that Representative Plaintiff is part of the settlement because he is receiving a Service Payment for initiating the Action and obtaining class wide resolution through settlement.[9]

On December 1, 2021, the Parties filed their Joint Notice of Settlement.[10] If approved, Settlement will fully and finally settle and resolve this action, including dismissal of this lawsuit and dismissal of the Plaintiff's Rule 23 Ohio law claims.[11]

---

[6] Agreement at ¶25; Baishnab Decl. at ¶14.

[7] Agreement at ¶26; Baishnab Decl. at ¶15.

[8] Agreement at ¶27.

[9] Agreement at ¶28.

[10] ECF No. 33.

[11] Agreement at ¶¶13, 20, 30.

Settlement resolves a bona-fide disputed matter. The Parties disagreed, and continue to disagree, as to whether Defendant failed to pay the Settlement Class Members all overtime earned as alleged, whether liquidated damages are appropriate, and whether the case could proceed collectively. Nevertheless, the Parties have come to a reasonable, fair, and adequate agreement to resolve this matter.[12]

As part of the settlement evaluation, Plaintiffs' Counsel calculated the mathematical expected value of the case through trial using TreeAge Pro©, a decision tree software. Specifically, Plaintiffs' Counsel assigned subjective probability values to each stage of the litigation (*e.g.*, conditional certification, trial, establishing willfulness, entitlement to liquidated damages, proving estimated damages, and jury award). Each of these risk probabilities was then compounded and analyzed against the damages calculated by Plaintiffs' Counsel. By utilizing this process, Plaintiffs' Counsel was able to more fully appreciate the complete risk picture and economic value of the case, rather than simply relying on intuition and experience. The final settlement value that was achieved exceeded the calculated expected value. Plaintiffs' Counsel believes that this fact confirms his experiential opinion that the proposed settlement is fair, adequate, and reasonable.[13]

Counsel for all Parties believe in the merits of their respective client's position but, nonetheless, recognize that the litigation is uncertain in terms of duration, cost, and result. Continued litigation would be risky for all. Even if Representative Plaintiff succeeded on the merits of his collective claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree.[14]

---

[12] Agreement at 1 and 3; and at ¶ 11; Baishnab Decl. at ¶17.

[13] Baishnab Decl. at ¶16.

[14] *Id*. at ¶18; Agreement at ¶¶31 to 32.

## C. The Settlement Terms

### 1. Settlement Notices

The Settlement Class consists of **101** individuals identified in Exhibit C of the Settlement Agreement. The Settlement Class consists of Representative Plaintiff, the four (4) current Opt-In Plaintiffs, and 96 other individuals who are allegedly similarly situated to Plaintiff and incurred alleged damages based on data produced by Defendant but who have not yet opted into the Action. For purposes of Settlement only, the Parties agree that Representative Plaintiff and the other Settlement Class Members are similarly situated under 29 U.S.C. § 216(b) of the FLSA.[15]

If approved by this Court, settlement will be effectuated by sending "Notice of Settlement" by Standard U.S. mail to each Settlement Class Member, which will explain the terms of settlement and the amount of the respective Settlement Class Members' Settlement Award. Opt-In Plaintiffs will receive a copy of the Notice attached as Exhibit B to the Agreement, and the Settlement Class Members who have not yet joined this case will receive a copy of the Notice attached as Exhibit C to the Agreement. These Notices will be accompanied by the Settlement Class Member's Settlement Payment. The Settlement Class Members who have not yet joined this case and who cash their settlement checks will agree to the release of claims described in the Agreement. Current Opt-in Plaintiffs will release claims, whether or not they cash their checks, unless they opt-out of the Action by withdrawing their Consent to Join forms.[16]

### 2. Allocations

Settlement includes Defendant paying the Global Settlement Fund in the amount of **$28,000.00**, which includes alleged unpaid overtime, the Service Payment, liquidated damages,

---

[15] Agreement at ¶¶16, 18, 39.

[16] *Id.* at ¶9.

attorneys' fees, and costs. The Global Settlement Fund does not include Defendant's share of the applicable employer tax withholdings.[17]

The Settlement Agreement provides for a Service Payment of **$500.00** to Representative Plaintiff as recognition of, and in consideration for, his substantial assistance rendered to Plaintiffs' Counsel and in pursuing the rights of all Settlement Class Members. Defendant agrees the Service Payment is reasonable and does not contest the request.[18]

If approved by the Court, **$9,333.33**, which represents one-third of the total settlement amount, shall be distributed to Plaintiffs' Counsel as attorneys' fees. Settlement also includes **$940.99** to be distributed to Plaintiffs' Counsel for costs incurred in pursuing the Action and the estimated costs of administering Settlement.[19]

As outlined in the Agreement, of the 138 individuals for which data was produced, 100 received bonuses and therefore had calculated damages. From the total estimated calculated damages, Plaintiffs' Counsel calculated each individual's respective percentage share of the total. Deductions were made from the Global Settlement Fund for one-third attorneys' fees, litigation costs including estimated costs of settlement administration, and Service Payment to determine the Net Settlement Fund, which was then multiplied by the individual percentage share to calculate estimated individual payments. For those with less than $25 in estimated calculated damages, the Net Settlement Fund was further reduced by the total amount needed to bring each of these

---

[17] *Id.* at ¶7.

[18] Agreement at ¶42; Baishnab Decl. at ¶19.

[19] Agreement at ¶¶41, 44; Baishnab Decl. at ¶¶20-21,

individuals to a minimum payment of $25. The remaining amount was then reallocated across the individuals according to their respective percentage share. The average payment is $172.26.[20]

## II. THE COURT SHOULD APPROVE THE FLSA SETTLEMENT.

Settlement of claims made pursuant to § 216(b) of the FLSA are subject to approval by the Court. As supported by the attached Declaration of Robi J. Baishnab, and as explained below, the Court should approve the Settlement.

### A. The seven-factor standard is satisfied.

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982)). As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *13 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 U.S. Dist. LEXIS 160792, at *6 (S.D. Ohio Sep. 20, 2019) (J. Morrison) (citing *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *13-14; and *Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

---

[20] *See* Agreement at ¶53; Exhibit C of Agreement; Baishnab Decl. at ¶15.

"The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Hebert*, 2019 U.S. Dist. LEXIS 160792, at *6 (citing *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *13-14 (internal quotations and further citations omitted)). Application of those factors to this Settlement demonstrates that the Court should approve the Settlement.

      **1.**      **No indicia of fraud or collusion exists.**

Plaintiffs' Counsel and Defendant's Counsel have extensive experience litigating FLSA claims, including claims for unpaid overtime, and each were given the opportunity to assess the merits of the Parties' claims and defenses, as well as the potential damages at issue in this case. The Parties contested the issues early, and Defendant continues to deny any wrongdoing.[21]

Settlement was achieved only after arm's-length good faith negotiations, and while the Parties forewent mediation, it was only to avoid additional costs. Notwithstanding settlement, the Parties continue to disagree as to whether any overtime compensation is owed under the FLSA or Ohio law.[22] As such, there are no indicia of fraud or collusion.

      **2.**      **The complexity, expense, and likely duration of continued litigation favor approval of the settlement.**

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. Moreover, the Parties strongly disagree about the merits of Representative Plaintiff's claims. Specifically, Representative Plaintiff alleged that Defendant had a company-wide policy of not including certain bonuses in the calculation of the regular rate which

---

[21] Baishnab Decl. at ¶¶1-10, 13.

[22] *Id*. at ¶17; Agreement at ¶¶24, 32.

resulted in unpaid overtime.[23] Defendant denies Representative Plaintiff's claims, and further denies that it violated any federal or state law and has consistently maintained this position throughout the duration of this case. Had this matter not settled, ongoing disputes would remain regarding certification, liability, damages, and collective treatment of claims.[24]

If forced to litigate this case further, the Parties would certainly engage in complex, costly, discovery and protracted wrangling, which could result in no recovery for the class at all. By contrast, the Settlement promptly and efficiently provides substantial relief to Representative Plaintiff and the other Settlement Class Members, and amplifies the benefits of that relief through the economies of class resolution. Settlement represents a successful resolution of the claims given that a trier of fact might conclude that the class is not entitled to any relief or to relief in an amount less than the amount agreed to in the Settlement, or that a court might not allow the claims to proceed collectively. It also provides immediate and substantial relief without the attendant risks and delay of continued litigation and appeals.[25]

       **3.    Investigation was sufficient to allow the parties to act intelligently.**

The Parties engaged in substantial investigation and informal discovery prior to negotiating the Settlement. Defendant produced documents that included time and payroll data for Representative Plaintiff and two Opt-in Plaintiffs, including clock in and clock out data, as well as a spreadsheet of time and pay data for 138 of the putative collective members, including four Opt-

---

[23] ECF No. 18; Agreement at ¶19.

[24] Baishnab Decl. at ¶17; Agreement at ¶32.

[25] *Id*. at ¶19.

in Plaintiffs.[26] Counsel for both Parties calculated potential damages based on their respective arguments and analysis of the relevant law.[27]

Plaintiffs' Counsel calculated the mathematical expected value of the case through trial using TreeAge Pro©, and settlement exceeds the calculated expected value. This supports the conclusion that the proposed settlement is fair, adequate, and reasonable.[28]

**4.  Given the risks of litigation, the Court should approve the Settlement.**

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Defendant raises affirmative defenses to Representative Plaintiff's claims, and the outcome of those defenses is uncertain as well. Collective treatment of the Action was uncertain, and continued litigation would be risky for all Parties.[29]

Representative Plaintiff's range of possible recovery is also open to dispute. Even if Representative Plaintiff succeeded on the merits of his claims, which Defendant disputes, the amount of recovery is uncertain and something upon which the Parties continue to disagree.[30]

**5.  Experienced counsel recommend the Court approve the Settlement.**

By entering into the Settlement Agreement, the Parties indicate their position that the Settlement is reasonable, fair, and adequate. Likewise, both Plaintiffs' and Defendant's Counsel have extensive experience in wage-and-hour collective and class actions, the Parties have acted in

---

[26] Agreement at ¶25.

[27] Agreement at ¶26.

[28] Baishnab Decl. at ¶16.

[29] Baishnab Decl. at ¶18.

[30] *Id.*; Agreement at ¶32.

9

good faith, and Counsel have represented their clients' best interests in reaching the Settlement. Plaintiffs' Counsel and Defendant's Counsel support the Settlement as reasonable, fair, adequate, and in the best interest of all Parties.[31]

### 6. Public interest supports approval.

Public interest favors approval because the Settlement reflects a reasonable compromise over disputed issues, and results in prompt and adequate compensation to the Settlement Class Members without the inherent risks and costs of litigation. Approval of the Settlement will encourage settlement of litigation.

### B. The settlement distributions are fair, reasonable, and adequate.

When scrutinizing an FLSA collective action settlement, "a court must ensure that the distribution of the Settlement proceeds is equitable." *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *31 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)). All components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable, and adequate for the Settlement Class Members.

The Settlement confers substantial benefits upon the Settlement Class Members. For example, Defendant's Counsel produced wage and hour data for the Settlement Class Members, from which Plaintiffs' Counsel created a damages model reflecting alleged unpaid overtime for the entire class. Additionally, each side shared their respective models, which were debated between Counsel.[32]

---

[31] *Id.* at ¶¶11, 13.

[32] Baishnab Decl. at ¶15; Agreement at ¶26.

The minimum payment to each Settlement Class Member is $25, and the average payment is $172.26.[33] Additionally, the total settlement amount exceeds the expected value calculated by per Plaintiffs' Counsel, which confirmed that the proposed settlement is fair, adequate, and reasonable.[34]

### 1. Plaintiff's Service Payment is proper and reasonable.

Representative Plaintiff seeks a **$500.00** Service Payment.[35] Courts routinely approve service payments to named plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Service payments are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Id.* (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (N.D. Ohio Mar. 8, 2010)).

In this Circuit, service payments to representative plaintiffs are "typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997); *see also*, *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time

---

[33] *See* Agreement at ¶53; Exhibit C of Agreement.

[34] Baishnab Decl. at ¶16.

[35] Agreement at ¶41; Baishnab Decl. at ¶20.

and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

Here, not only was Representative Plaintiff willing to shoulder the burden of being a named plaintiff in a class and collective action lawsuit, he also contributed significant time, effort, and detailed factual information, enabling Plaintiffs' Counsel to evaluate the strength of his case. Representative Plaintiff also provided valuable guidance as the Parties were negotiating settlement and provided Plaintiffs' Counsel with the information needed to evaluate whether the proposed Settlement was in the best interest of the Settlement Class Members.[36]

As such, his time and efforts support the requested Service Payment. Notably, the Parties agree that Representative Plaintiff is receiving a service payment for initiating the Action and obtaining class wide resolution through settlement and the payment is reasonable. Also, Defendant does not contest the requested Service Payment.[37]

### 2. The attorneys' fees to Plaintiffs' Counsel are proper and reasonable.

After the Court has confirmed that the terms of the Settlement are fair to the Settlement Class Members, it may review the Parties' agreement as to the provision of fees and costs to Plaintiffs' Counsel. The Settlement reflects Defendant's agreement that Plaintiffs' Counsel would receive one-third of the Global Settlement Fund, or **$9,333.33**, for attorneys' fees.[38]

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, the Sixth Circuit held that the FLSA's mandatory

---

[36] Baishnab Decl. at ¶20.

[37] Agreement at ¶¶28, 41.

[38] Agreement at ¶44; Baishnab Decl. at ¶21.

attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." 19 F.3d 1126, 1134-35 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 502–03 (6th Cir. 1984)).

This Court has recognized that an award of one-third "is typical for attorney's fees in common fund, FLSA collective actions in this District" and is "the most appropriate method for determining reasonable attorneys' fees in wage and hour cases." *Hebert*, 2019 U.S. Dist. LEXIS 160792, at *4, and 21-22 (quoting *Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, at * 14-15 (S.D. Ohio July 11, 2014)) (internal quotations omitted).[39]

"Absent compelling reasons to the contrary," courts apply the percentage method in wage and hour cases, "as it best reflects FLSA's employee-protection objective." *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *15 (S.D. Ohio May 17, 2021) (citing *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 U.S. Dist. LEXIS 32459, at *16 (S.D. Ohio Feb. 16, 2021) (internal quotations omitted)). "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class []." *Id.* (citing *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007).

---

[39] *See also Hixon v. MPW Indus. Servs.*, No. 2:20-cv-3361, 2021 U.S. Dist. LEXIS 107362, at *5 (S.D. Ohio May 11, 2021) ("The amount requested is typical for attorney's fees awarded in common fund, FLSA collective actions in this District"); *Campbell v. Wise Med. Staffing*, Case No. 2:18-CV-00493, 2020 U.S. Dist. LEXIS 253264, at *4 (S.D. Ohio Feb. 21, 2020) ("Court agrees and finds that one-third of the Settlement Fund is a reasonable percentage of the fund to be awarded for attorney's fees"); and *Adams et al v. Frontier Railroad Services, LLC*, S.D. Ohio, Case No. 2:19-cv-00808 (Dkt. No. 43) ("The requested attorney's fees award, which is one-third of the common fund, is reasonable")).

Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs, and expenses. Plaintiffs' Counsel will not receive payment for any fees incurred in the course of securing and effectuating settlement, including responding to inquiries from Settlement Class Members.[40] Thus, Plaintiffs' Counsel "assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci*, 2019 U.S. Dist. LEXIS 207645, at *19; and *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 936 (N.D. Ohio 2003) (Contingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery.") (further citation omitted).

Finally, courts in this district acknowledge that "wage and hour class and collective actions, such as this, are inherently complex and time-consuming." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *10; and *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *16.

Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the settlement fund appropriately compensates Plaintiffs' Counsel for their prosecution of this case and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d at 930; and *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

### 3. The Court should authorize reimbursement of expenses.

The Court should approve reimbursement of the expenses in this case. Plaintiffs' Counsel's

---

[40] Baishnab Decl. at ¶21.

14

current estimated litigation costs are **$940.99**, which include: Court filing fee, service, postage, and settlement administration.[41] "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *20 (citation omitted). In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.*

Because these costs are reasonable and were incurred in the prosecution of Representative Plaintiff's claims, the Court should award Plaintiffs' Counsel reimbursement of these costs and expenses from the Global Settlement Fund. Defendant does not oppose the requested fees or costs.[42]

### III. CONCLUSION

The Parties request that this Court enter the Order, attached hereto as Exhibit 3:

1. Approving the Parties' Settlement Agreement, a fully executed copy of which is attached hereto as Exhibit 1;

2. Approving the requested Service Payment to Representative Plaintiff;

3. Approving Plaintiffs' Counsel's requested attorneys' fees and costs;

4. Retaining jurisdiction over the Action to enforce the terms of the Settlement Agreement; and

5. Dismissing this matter with prejudice.

---

[41] Baishnab Decl. at ¶22.

[42] Baishnab Decl. at ¶23.

15

Respectfully submitted,

| | |
|---|---|
| **NILGES DRAHER LLC** | **Ogletree, Deakins, Nash, Smoak & Stewart, P.C.** |
| */s/ Robi J. Baishnab* | */s/Rebecca J. Bennett (with permission)* |
| Robi J. Baishnab (0086195) | Rebecca J. Bennett (0069566) |
| 1360 East Ninth Street | Samuel H. Ottinger (0099034) |
| Suite 808 | Key Tower |
| Cleveland, OH 44114 | 127 Public Square, Suite |
| Telephone: 216.230.2955 | 4100 Cleveland, OH 44114 |
| Facsimile: (330) 754-1430 | 216-241-6100 |
| Email: rbaishnab@ohlaborlaw.com | 216-357-4733 (FAX) |
| | Email: rebecca.bennett@ogletree.com |
| Hans A. Nilges (0076017) | Samuel.ottinger@ogletree.com |
| 7034 Braucher St NW, Suite B | |
| North Canton, OH 44720 | *Counsel for Defendant* |
| Telephone: (330) 470-4428 | |
| Facsimile: (330) 754-1430 | |
| Email: hans@ohlaborlaw.com | |

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2022, the foregoing was filed electronically with the Court. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                 */s/ Robi J. Baishnab*
                                                 Robi J. Baishnab

                                                 *Counsel for Plaintiffs*